UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LIONEL PIERRE,

         Plaintiff,

  v.

THE CITY OF NEW YORK, POLICE OFFICER
JASON CHAMBERS, and POLICE OFFICER
JAMES MELISSINOS,

         Defendants.

**MEMORANDUM AND ORDER**
18-CV-618 (LDH) (LB)

---

LASHANN DEARCY HALL, United States District Judge:

  Plaintiff Lionel Pierre, proceeding pro se, brings the instant action against Defendants New York City Police Department ("NYPD") Officers Jason Chambers and James Melissinos pursuant to 42 U.S.C. § 1983 alleging claims for false arrest, malicious prosecution, and excessive force. Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss the amended complaint in its entirety.

### UNDISPUTED FACTS[1]

  On February 20, 2015, Plaintiff was driving southbound on Springfield Boulevard in Queens, New York. (Defs.' Statement of Material Facts Pursuant to Local Civ. R. 56.1 ("Defs.' 56.1") ¶ 1, ECF No. 40.) Plaintiff turned left onto Merrick Boulevard. (*Id.* ¶ 2.) According to Defendants, Plaintiff failed to use a turn signal. (*Id.* ¶ 3.) Meanwhile, a pedestrian was walking in the crosswalk. (*Id.* ¶ 4.) According to Defendants, Plaintiff made the turn at a "high rate [of] speed," and did not slow down, stop, or sound his horn for the pedestrian, but rather maintained

---

[1] Unless otherwise noted, the following facts are taken from the parties' statements of material facts pursuant to Local Rule 56.1 and are undisputed. Facts that are not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

1

the same speed and swerved around the pedestrian. (*Id*. ¶ 5; Feb. 3, 2020 Decl. Tristan Montaque ("Montaque Decl.") Ex. F ¶ 4, ECF No. 39-6.)

Officer Chambers, who was on patrol nearby with Officer Melissinos, observed Plaintiff nearly strike the pedestrian. (Defs.' 56.1 ¶ 7.) Afterwards, Defendants flashed their lights and siren and pulled Plaintiff over on the southwest corner of 134 Road and 219 Street after Plaintiff continued driving several blocks. (*Id*. ¶ 8.) Defendants exited their vehicle to approach Plaintiff. (*Id*. ¶¶ 9–10.) As Defendants approached him, Plaintiff called 911 and reported there was a conspiracy against him and that the NYPD "planted" the pedestrian in the crosswalk to frame him. (*Id*. ¶¶ 10–11.) Defendants maintain that they did not have their guns drawn as they approached Plaintiff. (*See id*. ¶ 9.)

Defendants assert that at some point, Plaintiff began yelling and screaming in view of the public. (*Id*. ¶ 12.) Ultimately, Plaintiff was removed from his vehicle, after which Officer Chambers attempted to place Plaintiff in handcuffs. (*Id*. ¶ 13; Montaque Decl., Ex. D at 65:22–24.) Defendants assert that as Officer Chambers attempted to handcuff him, Plaintiff began twisting and flailing his arms in an attempt to resist arrest. (*See* Defs.' 56.1 ¶ 13.) Eventually, Plaintiff was handcuffed, though he does not remember by whom. (*Id*. ¶¶ 13–14; Montaque Decl. Ex. D at 70:3–5.) Plaintiff maintains that he suffered injury to his wrist and shoulder as a result of being tightly handcuffed. (Defs.' 56.1 ¶ 17.) Plaintiff informed one of the officers that his handcuffs were too tight, but he does not recall who. (*See id*. ¶ 16; Montaque Decl. Ex. D at 70:9–71:21.)

Plaintiff disputes Defendants' versions of events. Specifically, Plaintiff disputes that he failed to use a turn signal when turning left onto Merrick Boulevard, (Pl.'s Counterstatement of Material Facts ("Pl.'s Counter 56.1") ¶ 2, ECF No. 35); asserts he made the turn at "normal

2

speed," (Pl.'s Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") 2–3, ECF No. 35); asserts Defendants approached his vehicle with their guns drawn at him, (Pl.'s Counter 56.1 ¶ 14); disputes that he began yelling and screaming in view of the public, (*Id.* ¶ 12); and disputes that he resisted arrest, (*Id.* ¶ 13.)

Following his February 20, 2015 arrest, Plaintiff was arraigned on the following misdemeanor charges: (1) reckless endangerment in the second degree in violation of N.Y. Penal Law § 120.20, (2) resisting arrest in violation of N.Y. Penal Law § 205.30, (3) reckless driving in violation of N.Y. Vehicle and Traffic Law § 1212, (4) failing to exercise due care in violation of N.Y. Vehicle and Traffic Law § 1146, and (5) failing to signal in violation of N.Y. Vehicle and Traffic Law § 1163. (Defs.' 56.1 ¶ 24.) On September 22, 2015, the reckless endangerment and reckless driving charges were dismissed for facial insufficiency. (*Id.* ¶ 25.) On March 8, 2016, Plaintiff accepted an adjournment in contemplation of dismissal as to the remaining charges. (*Id.* ¶ 26.) On September 7, 2016, all charges against Plaintiff were dismissed. (*Id.* ¶ 27.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-

movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted), including when facing a summary judgment motion, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). Nevertheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id*. at 50 (internal quotation marks omitted).

## DISCUSSION

### I. False Arrest

Defendants argue that Plaintiff's claim for false arrest fails because they had probable cause to arrest him. (Defs.' Mem. L. Supp. Summ. J. ("Defs.' Mem.") 4–6, ECF No. 41.) The Court agrees.

It is well-settled that "[p]robable cause is a complete defense to an action for false arrest brought under New York law or § 1983." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (internal citation and quotation marks omitted). An officer has probable cause when he has "reasonably trustworthy information as to [] facts and circumstances that are sufficient to warrant a person of reasonable caution in the

belief that an offense has been . . . committed by the person to be arrested." *Id.* (alterations in original) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). Of particular relevance here, the Supreme Court has held that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution . . . ." *Virginia v. Moore*, 553 U.S. 164, 167, 176 (2008) (finding a warrantless arrest for misdemeanor traffic violation constitutional).

Here, Defendants maintain that they observed Plaintiff make a left turn at a "high rate [of] speed," without using a turn signal, nearly striking a pedestrian in the crosswalk. (Defs.' 56.1 ¶¶ 3–5; Montaque Decl., Ex. F ¶ 4.)  And, according to Defendants, Plaintiff did not slow down, stop, or sound his horn for the pedestrian but maintained the same speed, swerving around the pedestrian.  (Defs.' 56.1 ¶ 5.)  Plaintiff disputes Defendants' version of events.  However, dash cam footage from Plaintiff's vehicle shows Plaintiff making a left turn while failing to stop or slow down for a pedestrian in the crosswalk, nearly striking the pedestrian, and failing to use his horn to alert the pedestrian.[2]  (*See* Montaque Decl. Ex. A.)[3]

Plaintiff was subsequently arrested for, among other things, reckless driving in violation of V.T.L. § 1212 and failing to exercise due care in violation of V.T.L. § 1146.

---

[2] The Court is unable to determine from the video how fast Plaintiff was driving and whether Plaintiff used a turn signal.

[3] On July 7, 2020, Defendants provided the Court Defendants' Exhibit A (ECF No. 39-2.), a non-text exhibit, on a compact disk, in accordance with this Court's Individual Practices. By order dated Mach 10, 2021, the Court directed Defendants to provide the Court with Exhibit A in an electronic format viewable for the Court on or before March 16, 2021.  Defendants provided the video footage to the Court via an electronic file share, accordingly.  The Court may rely upon video evidence to resolve questions of fact on a motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 379–80 (2007) (considering deputy's motion for summary judgment, the court should view the facts in the light depicted by videotape which captured events underlying excessive force claim); *Fabrikant v. French*, 691 F.3d 193, 215 n.6 (2d Cir. 2012) (affirming grant of summary judgment based on probable cause and qualified immunity in part relying on video evidence where plaintiff did not dispute accuracy of video, but "dispute[d] only how to characterize that evidence").

(Defs.' 56.1 ¶ 24.) Reckless driving is driving in a manner which "unreasonably interferes with the free and proper use of the public highway, or unreasonably endangers users of the public highway." V.T.L. § 1212. A driver fails to exercise due care when he fails to attempt to "avoid colliding with any . . . pedestrian . . . upon any roadway and shall give warning by sounding the horn when necessary." *Id*. § 1146(a). On these facts, Defendants had probable cause to arrest Plaintiff for traffic violations committed in their presence. There is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law on Plaintiff's false arrest claim.

## II. Malicious Prosecution

To establish a claim for malicious prosecution under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against [him]; (2) termination of the proceeding in [his] favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [defendants'] actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quotations omitted). Defendants argue that Plaintiff cannot prove any element of his claim. (Defs.' Mem. 6–8.) The Court agrees.

*First*, Plaintiff fails to prove that Defendants' initiated or continued any criminal proceeding against him. To satisfy this element, "it must be shown that the defendant[s] played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) (quoting *DeFilippo v. County of Nassau*, 583 N.Y.S.2d 283, 284 (2d Dept. 1992)). Here, the record is devoid of any evidence that Defendants did more than participate in Plaintiff's arrest. However, an arrest without more is insufficient to establish the requisite initiation. *See Weiner v. McKeefery*, 90 F. Supp. 3d 17, 33, n.4 (E.D.N.Y. 2015) (recognizing that a police sergeant's

6

signature on a civilian arrest form is insufficient to constitute an initiation of a criminal prosecution for purposes of a malicious prosecution claim).

*Second*, Plaintiff fails to establish that any of the charges terminated in his favor. The charges lodged against Plaintiff for reckless endangerment and reckless driving were each dismissed for facial insufficiency. (Defs.' 56.1 ¶ 25.) The Second Circuit has held that dismissal for facial insufficiency is "not a [favorable] decision on the merits," which is an "essential element of a cause of action for malicious prosecution." *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (affirming district court's dismissal of a malicious prosecution claim, on summary judgment, where the charges underlying the claim were dismissed for facial insufficiency). The charges for resisting arrest, failing to exercise due care, and failing to signal were each adjourned in contemplation of dismissal. (Defs.' 56.1 ¶ 26.) An adjournment in contemplation of dismissal is "a conditional dismissal that becomes final 6–12 months thereafter if the court has not in the interim, on motion of the prosecutor, restored the case to the calendar upon determining that the dismissal 'would not be in furtherance of justice[.]'"[4] *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002) (quoting N.Y. Crim. Proc. Law § 170.55(2)). For the purposes of a malicious prosecution claim, therefore, an adjournment in contemplation of dismissal is not deemed a favorable determination "because it leaves open the question of the accused's guilt." *Fulton*, 289 F.3d at 196.

*Third*, Plaintiff has not established a lack of probable cause. As discussed above, the Court has already determined that there was probable cause for the arrest. Where probable cause to arrest existed, a plaintiff must show that the defendants learned of some "intervening facts" undermining probable cause "between arrest and initiation of prosecution, [or the] claim[] of

---

[4] On September 27, 2016, all charges against Plaintiff were dismissed. (Defs.' 56.1 ¶ 27.)

malicious prosecution cannot survive." *Thomas v. City of New York*, 562 F. App'x 58, 60 (2d Cir. 2014); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d. Cir. 1996) ("In order for probable cause to dissipate [between arrest and prosecution], the groundless nature of the charges must be made apparent by the discovery of some intervening fact."). Plaintiff has adduced no evidence of any intervening facts that might serve to undermine the probable cause established at the time of his arrest. *See Soto v. City of New York*, 132 F. Supp. 3d 424, 453 (E.D.N.Y. 2015) (granting summary judgment for defendants where plaintiff produced no evidence that law enforcement officers became aware of exculpatory evidence that could undermine probable cause after arrest); *Leogrande v. Suffolk Cty.*, No. 08-CV-3088, 2016 WL 889737, at *4 (E.D.N.Y. Mar. 9, 2016) (granting summary judgment to defendant officers where plaintiff adduced no post-arrest facts that would alter the initial finding of probable cause). There is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law on Plaintiff's malicious prosecution claim.

### III. Excessive Force

Police officers are prohibited from using "unreasonable and therefore excessive force . . . in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). That said, "[o]fficers are entitled to use some degree of force when restraining a suspect during an arrest." *Faruki v. City of New York*, 517 F. App'x 1, 2 (2d Cir. 2013). In assessing the reasonableness of the force used by an officer, courts must conduct a "case and fact specific" inquiry that balances "the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96. Defendants maintain that none of Plaintiff's complained of conduct constitutes excessive of force as a matter of law. (Defs.' Mem. 9–11.) The Court agrees, in part.

8

Plaintiff asserts that Defendants approached his vehicle with their guns drawn. (Pl.'s Counter 56.1 ¶ 14.) Defendants dispute this contention. (*See* Defs' 56.1 ¶ 9.) Whether true or not, this fact cannot support Plaintiff's claim. Notably, Plaintiff has not contended that any officer used a gun to exact force against him. (*See generally* Pl.'s Counter 56.1) Therefore, Plaintiff's complaint in this regard is best characterized as premised upon the threat of force. As courts in this circuit have invariably held, threats of force, including the drawing of a gun, cannot constitute excessive force as a matter of law. *See Cabral v. City of New York*, No. 12-CV-4659, 2014 WL 4636433, at *11 (S.D.N.Y. Sept. 17, 2014) (collecting cases and dismissing claim based on drawing of gun), *aff'd*, 662 F. App'x 11 (2d Cir. 2016); *see also Just. v. McGovern*, No. 11-CV-5076, 2013 WL 1809634, at *2 (E.D.N.Y. Apr. 29, 2013) (collecting cases).

Plaintiff's complaint concerning the use of handcuffs warrants a different conclusion. Specifically, Plaintiff asserts that the handcuffs used during his arrest were too tight causing injury to his wrists and shoulder. (Defs.' 56.1 ¶ 17.) In evaluating the reasonableness of handcuffing, courts in this circuit consider evidence that: "1) the handcuffs were unreasonably tight; 2) the defendant[] ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *See Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (quoting *Esmont v. City of New York*, 371 F.Supp.2d 202, 215 (E.D.N.Y. 2005)). That said, the Second Circuit has cautioned that while these factors "may, indeed, prove useful," the test of reasonableness "is not limited to a factual checklist" and must carefully balance the nature of the intrusion and the countervailing governmental interests under the circumstances. *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019). Thus, a Fourth Amendment claim can lie where "an officer's use of force in handcuffing is plainly

9

unreasonable under the circumstances *or* where a plaintiff manifests clear signs of [his] distress—verbally or otherwise[.]" *Id*. at 613 (emphasis in original).

The Second Circuit's decision in *Horace v. Gibbs* is instructive. There, the court reversed the district court's dismissal of an excessive force claim, holding, among other things, that "there was room for doubt as to whether [the plaintiff] posed a safety threat, immediate or otherwise, to the [arresting] officers such that tight handcuffing [which resulted in minor injury] was necessary." *Horace v. Gibbs*, 802 F. App'x 11, 13, 16 (2d Cir. 2020). In making its finding, the *Horace* court highlighted that the plaintiff was arrested for relatively minor parole violations—driving a car, having extramarital affairs, and using "an herbal supplement . . . which he was prohibited from using." *Id*. at 16. It further noted, that, among other things, "there was no indication that during the arrest giving rise to this claim [the plaintiff] resisted arrest or attempted to evade arrest by flight." *Id*.

This case presents similar, though not identical, circumstances. Here, Defendants do not dispute that the handcuffs were tight or that Plaintiff was arrested for misdemeanor traffic violations. And, though there is a dispute as to whether Plaintiff initially resisted arrest, there is no evidence that he posed a physical threat to Defendants or was a flight risk. Defendants devote the entirety of their argument to highlighting the lack of evidence demonstrating serious injury to Plaintiff. (*See* Defs.' Mem. 9–11.) Indeed, Plaintiff complains only of some injury to his wrist and shoulder. (Defs.' 56.1 ¶ 17.) However, the Second Circuit made clear in *Horce* that it would be legal error for the district court to "treat[] one factor—the absence of serious injury— as dispositive [on motion for summary judgment] without considering other factors such as the reasonableness of the tight handcuffs under the circumstances and whether the defendants ignored the plaintiff's complaints." *Horce*, 802 F. App'x at 15–16. The Court therefore rejects

10

the argument that summary judgment is warranted simply because Plaintiff did not suffer serious injury.[5] Upon consideration of whether, here, the handcuffs were unreasonably tight, whether Defendants ignored Plaintiff's pleas that his handcuffs were too tight, the degree of injury, the intrusion, and the governmental interests, the Court concludes that a reasonable juror could find the use of tight handcuffing objectively unreasonable in this case.

Defendants maintain that they are nonetheless entitled to qualified immunity on Plaintiff's excessive force based on tight handcuffs. (Defs.' Mem. 12.) The Court disagrees. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotations omitted). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999)). In assessing whether an officer is entitled to qualified immunity, a court must consider: "(1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133–34 (2d Cir. 2010)). "Even if the force is objectively unreasonable, an officer may still be eligible for qualified immunity if it

---

[5] Plaintiff alleges for the first time in opposition to summary judgment that at some point, Defendants also kicked his legs. (Pl.'s Opp'n 3.) A plaintiff, even when proceeding pro se, may not raise new allegations for the first time in opposition to summary judgment. *See Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) ("The district court did not err in disregarding allegations [pro se plaintiff] raised for the first time in response to [defendant]'s summary judgment motion.").

11

was objectively reasonable for the officer to *believe* that her action[s] did not violate clearly established law." *Keene v. Schneider*, 350 F. Appx. 595, 596 (2d Cir. 2009) (emphasis in original).

Defendants maintain that Plaintiff conceded that he does not remember whether he ever informed either officer of any pain due to tight handcuffs. (Defs.' Mem. 14 (citing Defs.' 56.1 ¶ 16 (citing Montaque Decl., Ex. D at 71:12–21).)) On this basis, Defendants argue they are entitled to qualified immunity because in February 2015, when this incident occurred, it was not clearly established that an officer had to loosen handcuffs for an arrestee where the arrestee did not make a specific, verbal complaint that the handcuffs were too tight and causing injury. (Defs.' Mem. 14.) Defendants mischaracterize the record. Plaintiff did not concede that he does not remember whether he informed any officer that his handcuffs were too tight. (*See* Montaque Decl. Ex. D at 71:12–27.) To the contrary, Plaintiff testified at his deposition that he told at least one of the officers that his handcuffs were too tight. (*See, e.g.*, *id*. at 71:1–20.) Indeed, the only concession Plaintiff made is that he does not remember who he told. For example:

> Q: Who did you tell - -
> A. I don't recall.
> Q. (Continuing) that the handcuffs were too tight?
> A. I don't recall. It was the other guy, the white shit guy, who was there. It's got to be the boss who was there, somebody with the white shirt.
> Q. So it's your testimony that you told the individual in the white shirt that the handcuffs were too tight, correct?
> A Yes, I believe I told him my phone was on the floor too and I said could they pick up the phone.

(*Id*. at 70:16–71:1.) Defendants' only argument that they are entitled to qualified immunity is therefore defeated by the facts.[6]

---

[6] The only case cited by Defendants in support of their argument is *Cugini v. City of New York*. In light of Defendants' mischaracterization of the record, Defendants' reliance on *Cugini* is misplaced. In *Cugini*, the plaintiff did not verbally communicate her distress from the handcuffs. *See* 941 F.3d at 617. Such is not the case here.

12

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part. Plaintiff's claims pursuant to 42 U.S.C. § 1983 for false arrest and malicious prosecution are dismissed. Plaintiff's claim pursuant to 42 U.S.C. § 1983 for excessive force based on the use of tight handcuffs survives.

                                                SO ORDERED.

Dated: Brooklyn, New York                  /s/ LDH
       March 31, 2021                       LaSHANN DeARCY HALL
                                          United States District Judge